```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON
```

MICHAEL BISHOP,                    )
                                   )
     Plaintiff,                    )
                                   )        Civil Case No.
v.                                 )        5:13-cv-200-JMH
                                   )
CAROLYN W. COLVIN, ACTING          )        **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL             )        **AND ORDER**
SECURITY,                          )
                                   )
     Defendant.                    )

                              ***

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 12, 13] on Plaintiff's appeal of the Commissioner's denial of his application for a period of disability and disability insurance benefits under Title II and an application for Supplemental Security Income (SSI) under Title XVI. [Tr. 44-55].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will grant Plaintiff's motion, deny the Commissioner's motion, and remand this matter for reconsideration consistent with this Opinion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the

relevant time period under step one. [Tr. 46]. Under step two, the ALJ found that Plaintiff's medically determinable impairments of neck pain secondary to bulging disks, back pain secondary to lumbar disc bulges, impingement syndrome, mild cognitive disorder, personality disorder, pain disorder, depressive disorder, and anxiety disorder were "severe" as defined by the agency's regulations. [Tr. 47]; 20 CFR §§ 404.1520(c), 416.920(c) (2012). The ALJ further found that Plaintiff's impairments of diverticulosis and hearing loss were "non-severe" impairments. [Tr. 47].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and determined that none of them met the criteria listed in 20 CFR pt. 404, subpt. P, app. 1. [Tr.47-48]. After further review of the entire record, the ALJ concluded at step four that Plaintiff had a residual functional capacity (RFC) to perform less than the full range of light work. [Tr. 48]. The ALJ found Plaintiff had the following exertional and non-exertional limitations: he is limited to no lifting/carrying more than 20 pounds occasionally, ten pounds frequently, no standing/walking more than six hours out of an eight hour day, and no sitting for more than six hours out of an eight hour day. The ALJ determined that Plaintiff could occasionally push/pull or reach with the left upper extremity, frequently push/pull or reach with the right upper extremity,

3

occasionally push or pull with the right lower extremity and must have no requirement for operation of foot pedal controls with the right lower extremity. Plaintiff may occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, and crouch, may never crawl, and should avoid full-body vibration and hazards such as unprotected heights or dangerous machinery. The ALJ further limited Plaintiff by finding that he required an object focused work environment in which contact with coworkers and supervisors is casual and occasional in a non-public work setting, and simple repetitive work tasks. The ALJ determined that Plaintiff can maintain attention and concentration for two-hour segments during an eight-hour workday, is able to adapt to gradual changes in a routine work environment, and must be in an environment where there is no requirement for fast-paced production quotas or goals. [Tr. 48-49].

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 53]. The ALJ further found that there were jobs in the national economy that Plaintiff could perform. [Tr. 54]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 55].

In this appeal, Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinion of the treating physician, the ALJ erred by failing to consider all of

Plaintiff's impairments, and that the ALJ's decision was not supported by substantial evidence.

**II. Standard of Review**

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Factual and Procedural Background**

Plaintiff was 37 years old at the time of alleged disability [D.E. 54], and has a high school education. [D.E. 54]. Plaintiff entered the military after high school and was discharged due to a personality disorder. [Tr. 841]. Plaintiff has past relevant work as a machine repairer, billboard hanger,

5

gluer, gas pump repairer, garage door installer, and inventory clerk. [D.E. 53]. Plaintiff filed a Title II application for disability benefits and a Title XVI application for Supplemental Security Income (SSI), alleging disability beginning on May 31, 2007. [Tr. 44]. The claims were denied both initially and upon reconsideration. [Tr. 44]. Plaintiff requested a hearing with the ALJ, which took place on June 14, 2012. [Tr. 44]. The ALJ issued an unfavorable decision denying disability insurance benefits and SSI on July 27, 2012. [Tr. 55].

According to Plaintiff, he has lower back pain, pain in both shoulders, right leg pain, and stomach problems. [D.E. 194]. Plaintiff claims that the pain is constant. [D.E. 195]. Plaintiff treats his pain with stretching and pain medications. [D.E. 195]. Plaintiff testified at the hearing that he takes oxycodone, Neurontin, and Para Forte for his pain. [Tr. 853].

Dr. Bennett Asher treated Plaintiff from June 1998 to June 2010. Dr. Asher treated Plaintiff for shoulder pain, [Tr. 524], severe back pain, [Tr. 522], depression, anxiety, [Tr. 516], and diverticulitis. [Tr. 508].

An MRI of the lumbar spine led to a diagnosis of degenerative disc disease in January of 2004. [Tr. 476]. Plaintiff was evaluated at Central Kentucky Pain Management on February 20, 2004. [Tr. 301-302]. He had difficulty walking on his heels and toes, as well as an antalgic gait to the right

side. [Tr. 302] At that time, an MRI revealed an annular tear in the L5-S1, and broad based disc protrusion. [Tr. 302].

On March 13, 2008, Plaintiff was seen at Saint Joseph Mount Sterling Hospital. The radiology report indicates that Plaintiff was diagnosed with acute sigmoid diverticulitis. [Tr. 326; 336]. On July 16, 2008, Plaintiff was examined by Dr. Kip Beard, who found evidence of a left clavicle fracture, with moderate pain in the left shoulder and mild pain in the right shoulder. [Tr. 350].

Plaintiff underwent a psychological evaluation performed by Dr. Geraldo Lima on July 19, 2008. [Tr. 351-54]. Dr. Lima determined that Plaintiff was able to understand simple instructions, but has difficulty recalling that information. [Tr. 354]. Additionally, Dr. Lima found that Plaintiff could concentrate, perform tasks in a normal amount of time, and his ability to cope with the pressures of a work environment were minimally reduced. [Tr. 354]. Plaintiff was again examined by Dr. Lima on June 15, 2009. [Tr. 397-400]. At this time, Dr. Lima deviated from his previous evaluation by determining, due to being irritable, Plaintiff was unlikely to do well in social contexts. [Tr. 400].

An August 2007 report indicates that Plaintiff had degenerative disc disease in the lower cervical spine. [Tr. 447]. Additionally, Plaintiff had a displaced clavicular

7

fracture in the left shoulder. [Tr. 448]. On September 4, 2008, an MRI of Plaintiff's lumbar spine revealed a bulge at the L4-5, with no significant central canal stenosis, and no direct nerve root impingement. [Tr. 371]. At L5-S1, there was central disc bulge with no central canal stenosis or neural foraminal narrowing. [Tr. 371]. In December 2008, Plaintiff went to the St. Claire Regional Medical Center for abdomen pain. The pain was determined to be caused by sigmoid diverticulosis. [Tr. 379].

Plaintiff also visited multiple pain clinics across the southeastern United States. [Tr. 850-51]. Plaintiff visited Respectable Medical Group in Rock Hill, South Carolina from September 2010 to January 2011. [Tr. 554-614]. At his last visit, January 25, 2011, Plaintiff was described as doing well on medications, oxycodone, and, as a result, his quality of life and pain relief had improved. [Tr. 555]. Plaintiff was also a patient at Prime Health Group in Norcross, Georgia from June 2011 to January 2012. [Tr. 664-87]. At this facility, Plaintiff was prescribed oxycodone, Xanax, Neurontin, and Paxil to help with back, neck, and shoulder pain. [Tr. 684].

Plaintiff was referred to Dr. Mary Allen Genthner for a psychological evaluation on March 25, 2011. [Tr. 616-24]. Dr. Genthner determined that Plaintiff could follow simple instructions, but could not follow detailed instructions. [Tr.

622]. Plaintiff was mildly to moderately limited in his ability to carry out simple repetitive tasks, his attention skills were mildly to moderately limited, his ability to relate to employers and coworkers was mildly to moderately limited, his capacity to deal with the public was mildly to moderately limited, and simple changes in routine were likely to be overwhelming to Plaintiff. [Tr. 622].

Dr. Samuel Welch, who began seeing Plaintiff in January 2012, completed a mental impairment questionnaire on May 15, 2012. [Tr. 695-98]. Dr. Welch opined that Plaintiff had moderate limitations in activities of daily living, marked difficulties in maintaining social functions, frequent difficulties concentrating, and unknown episodes of decompensation. [Tr. 698].

The New Hope Clinic treated Plaintiff from January 2012 to May 2012 [Tr. 699], where he was diagnosed with disk disease of the lumbar spine and diverticulosis. [Tr. 709]. Additionally, Plaintiff was treated at Pathways for mental health impairments. [Tr. 728-748]. Plaintiff was diagnosed with depressive disorder and anxiety disorder. [Tr. 735]. Consequently, Plaintiff was prescribed Cymbalta. [Tr. 739].

Vocational expert Martha Goss testified at the hearing before the ALJ. [Tr. 870]. Ms. Goss testified that a person with an RFC equivalent to the ALJ's RFC finding for Plaintiff would

9

not be able to return to Plaintiff's past relevant work. [Tr. 875]. However, Ms. Goss found that there would be jobs in the national economy that someone with that RFC assessment could perform. [Tr. 875]. Ms. Goss testified that a hypothetical person could perform no jobs in the national economy if that person were limited to sedentary exertional level and had to miss work twice a month. [Tr. 876-77].

Plaintiff is able to walk 10 minutes at a time, with the assistance of a cane, [Tr. 856], can stand for anywhere from 5 to 30 minutes, [Tr. 857], can sit for up to an hour, [Tr. 857], and cannot lift over 10 pounds. [Tr. 857]. Plaintiff spends most of his time watching television, [Tr. 863], and occasionally uses a laptop to communicate with friends and check the news. [Tr. 868]. Plaintiff claims he needs help with personal hygiene, [Tr. 196], help with getting dressed, [Tr. 196], he does not cook, [Tr. 197], sometimes is able to help with household chores, [Tr. 197], and has a driver's license, but does not drive, unless it is absolutely necessary. [Tr. 840, 855].

**IV. Analysis**

The ALJ failed to give good reasons for giving little weight to the treating physician's opinions; thus, the Commissioner's decision must be reversed and remanded. Plaintiff argues the treating physician rule was not followed because the opinion of the treating physician was completely ignored. "[A]n

10

opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a nonexamining source), and an opinion from a medical source who regularly treats the claimant (a treating source) is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a nontreating source)." *Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Id.* at 376 (quoting 20 CFR § 404.1527(c)(2)).

"The Commissioner is required to provide 'good reasons' for discounting the weight to a treating-source opinion." *Id.* at 376 (citing 20 CFR § 404.1527(c)(2)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "[The Court] will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports

the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician." *Friend v. Comm'r of Soc. Sec.*, 374 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-46 (6th Cir. 2004)).

The ALJ failed to provide good reasons for affording the opinion of the treating physician, Dr. Bennett Asher, little weight. The only opinion discussed by the ALJ when providing an explanation for the weight given to the opinion was Dr. Asher's opinion that the claimant was unable to work. *See* [Tr. 52]. This opinion is not subject to the treating physician rule. *See* Soc. Sec. Rul. No. 96-5p, 1996 WL 374183, at *2 (Soc. Sec. Admin. July 2, 1996) (declaring that the determination of whether an individual is disabled is "reserved to the Commissioner").

However, this was not the only opinion expressed by Dr. Asher. The ALJ explicitly noted Dr. Asher's opinions that Plaintiff's pain would interfere with Plaintiff's attention and concentration and that due to the pain and anxiety, Plaintiff would be unable to deal with others on the job. [Tr. 52]. The ALJ did not even attempt to explain why these opinions should be afforded little weight. The ALJ's only reason for giving Plaintiff's treating physician little weight was that Plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual." [Tr. 52]. The

12

ALJ did not even attempt to explain why Dr. Asher's opinions on the severity of Plaintiff's inability to concentrate and deal with others were not given great weight. *See Friend*, 375 F. App'x at 552 ("[T]here must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick."); *Sharp v. Barnhart*, 152 F. App'x 503, 510 (6th Cir. 2005) (citations omitted) ("In the face of extensive records and specific diagnoses introduced by [plaintiff], the ALJ's generalized comment that the treating physicians' opinions were not 'based on a solid clinical and diagnostic foundation,' with no elaboration or detail, does not satisfy the procedural requirements for rejecting a treating physician's opinion laid out in § 404.1527(d)(2).").

The explanation given by the ALJ in this case, that the treatment is not consistent with a person that is disabled, is similar to a "good reason" rejected by the Sixth Circuit. The Sixth Circuit found that the notice requirement was not met when the ALJ simply stated that "the record does not support the limitations of severity suggested by Dr. Stein." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007). The statement by the ALJ in this case, that "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual" [Tr. 52], is no less

13

deficient. This statement fails to fulfill the reasons for having a notice giving requirement. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)) (internal quotation marks omitted) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases . . . [,] ensures that the ALJ applies the treating physician rule[,] and permits meaningful review of the ALJ's application of the rule.").

Furthermore, when great weight is not given to the opinion of a treating physician the ALJ is required to "apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of [20 CFR § 404.1527], as well as the factors in paragraphs (c)(3) through (c)(6) of [20 CFR § 404.1527] in determining the weight to give the opinion." 20 CFR § 404.1527(c)(2).

> Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much weight to give it; in doing so, the ALJ must take into account the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion.

*Friend*, 375 F. App'x at 550 (citing 20 CFR § 404.1527(d)(2)-(6)). The ALJ did not assess any of the factors listed in 20 CFR § 404.1527; thus, this matter must be remanded to the ALJ.

The ALJ's failure to provide good reasons for giving little weight to Plaintiff's treating physician does not amount to harmless error.

> [A] violation of the [treating physician] rule might be 'harmless error' if (1) 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it'; (2) 'if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion'; or (3) 'where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.

*Friend*, 375 F. App'x at 551 (quoting *Wilson*, 378 F.3d at 547).

The Commissioner has not adopted the opinion of the treating physician because the Commissioner denied Plaintiff disability benefits and the treating physician opined that the physical impairments were so severe that Plaintiff was unable to work. Additionally, the ALJ's RFC assessment did not include the functional limitations included in Dr. Asher's RFC assessment.

The treating physician's opinion is also not "so patently deficient that the Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547. Dr. Asher's opinion is based upon treatment of Plaintiff that spans almost 12 years. [Tr. 505-37]. Dr. Asher completed a physical capacities evaluation in June 2010 [Tr. 506] and an RFC evaluation in May 2012. [Tr. 690-94]. Both of these evaluations provided the ALJ with opinions on Plaintiff's functional capabilities based upon Dr. Asher's diagnoses and treatment of Plaintiff's medical conditions. Under

15

these circumstances, the opinion of the treating physician cannot be considered "patently deficient."

The ALJ's decision also does not fulfill the goals of the treating physician rule. In determining whether the goals of the reasons giving requirement are met, the Court will review the decision "to see if it implicitly provides sufficient reasons for the rejection of the treating physician's opinion not merely whether it indicates that the ALJ did reject that opinion." *Friend*, 375 F. App'x at 552 (quoting *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006)). The ALJ did discuss other record evidence, but merely described the medical findings and opinions of non-treating physicians. A mere recitation of the findings of other medical professionals does not allow Plaintiff to understand why he was denied benefits. Additionally, this recitation does not allow the Court to conduct a meaningful review of the ALJ's application of the treating physician rule. Therefore, the ALJ's failure to comply with the treating physician rule is not harmless error and the matter must be reversed and remanded.

The Court will not address Plaintiff's argument that the Commissioner's decision was not supported by substantial evidence and, therefore, makes no finding as to whether the Commissioner's decision was supported by substantial evidence. "[T]o recognize substantial evidence as a defense to non-

these circumstances, the opinion of the treating physician cannot be considered "patently deficient."

The ALJ's decision also does not fulfill the goals of the treating physician rule. In determining whether the goals of the reasons giving requirement are met, the Court will review the decision "to see if it implicitly provides sufficient reasons for the rejection of the treating physician's opinion not merely whether it indicates that the ALJ did reject that opinion." *Friend*, 375 F. App'x at 552 (quoting *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006)). The ALJ did discuss other record evidence, but merely described the medical findings and opinions of non-treating physicians. A mere recitation of the findings of other medical professionals does not allow Plaintiff to understand why he was denied benefits. Additionally, this recitation does not allow the Court to conduct a meaningful review of the ALJ's application of the treating physician rule. Therefore, the ALJ's failure to comply with the treating physician rule is not harmless error and the matter must be reversed and remanded.

The Court will not address Plaintiff's argument that the Commissioner's decision was not supported by substantial evidence and, therefore, makes no finding as to whether the Commissioner's decision was supported by substantial evidence. "[T]o recognize substantial evidence as a defense to non-

compliance with § 1527(d)(2), would afford the Commissioner the ability the [sic] violate the regulation with impunity and render the protections promised therein illusory." *Wilson*, 378 F.3d at 546. Thus, as the ALJ violated the treating physician rule, whether the Commissioner's decision was supported by substantial evidence has no bearing on whether the Commissioner's decision should be reversed and remanded. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 546) ("[E]ven if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error.").

Plaintiff's other argument, that the ALJ failed to consider all of Plaintiff's impairments in issuing the decision, does not require reversal. Plaintiff argues that the ALJ failed to consider all of Plaintiff's impairments and the combined effects of those impairments. According to Plaintiff, he became disabled due to "severe chronic back, neck and shoulder pain along with anxiety and depression." [D.E. 12-1 at 2]. In determining that Plaintiff did not have a combination of impairments that equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, the ALJ expressly discussed Plaintiff's pain and mental impairments. [Tr. 47-48].

The ALJ did not find Plaintiff's degenerative disc disease severe because there was "no evidence of nerve root compression or neurological defect." [Tr. 47]. The ALJ found that the left shoulder pain was not severe because there was "no evidence of extreme loss of function of both upper extremities and the claimant's upper extremity impairment does not meet or equal section 1.02(B)." [Tr. 47]. The ALJ further stated that the complaint of constant pain had been considered, but the details provided by Plaintiff were not convincing. [Tr. 47].

The ALJ considered Plaintiff's allegations of disability due to mental impairments and determined that the mental impairments, "singly and in combination, do not meet or medically equal the criteria of listings 12.02 and 12.08." [Tr. 47]. The ALJ then went through each category of the paragraph B criteria and determined that the mental impairments did not meet two of the paragraph B criteria; thus, the mental impairments did not result in a disability due to Paragraph B. [Tr. 47-48]. The ALJ also considered whether the mental disability resulted in a severe impairment under the Paragraph C criteria. [Tr. 48]. Plaintiff's argument that the ALJ did not consider the combined effects of the impairments is unavailing because the ALJ explicitly discussed the effects of Plaintiff's impairments. *See Gooch v. Sec. of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) ("[T]he fact that each element of the record was

discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to a 'combination of impairments' in deciding that [plaintiff] did not meet the 'listings.'").

**V. Conclusion**

Accordingly, based on the foregoing, **IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [D.E. 12] be, and the same hereby is, **GRANTED**;

(2) that Defendant's Motion for Summary Judgment [D.E. 13] be, and the same hereby is, **DENIED**;

(3) the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

This the 9th day of January, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge